TOWNSEND AND TOWNSEND AND CREW LLP
DANIEL J. FURNISS (State Bar No. 73531)
BYRON W. COOPER (State Bar No. 166578)
GARY H. RITCHEY (State Bar No. 136209)
GREGORY S. BISHOP (State Bar No. 184680)
THOMAS F. FITZPATRICK (State Bar No. 193565)
379 Lytton Avenue
Palo Alto, California  94301
Telephone: (650) 326-2400
Facsimile: (650) 326-2422
Email:  djfurniss@townsend.com
Email:  bwcooper@townsend.com
Email:  ghritchey@townsend.com
Email:  gsbishop@townsend.com
Email:  tffitzpatrick@townsend.com

Attorneys for Defendant
COMMONWEALTH SCIENTIFIC AND
INDUSTRIAL RESEARCH ORGANISATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| INTEL CORPORATION and DELL, INC., | Case No.    C 05-01886 MJJ |
| Plaintiffs, | **COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) and 12(b)(2); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION, | |
| Defendant. | |
| | **Date:        September 13, 2005**<br>**Time:        9:30**<br>**Courtroom:   11**<br>**Judge:       Hon. Martin J. Jenkins** |

1  TO PLAINTIFFS INTEL CORPORATION AND DELL, INC. AND THEIR ATTORNEYS OF

2  RECORD:

3          NOTICE IS HEREBY GIVEN that on September 13, 2005, at 9:30 a.m. or as soon thereafter

4  as this may be heard, in the Courtroom of the Honorable Martin J. Jenkins, located at 450 Golden Gate

5  Avenue, Courtroom 11, San Francisco, California 94102, Defendant Commonwealth Scientific and

6  Industrial Research Organisation ("CSIRO"), by and through its attorneys, will and hereby move for

7  an order to dismiss the action pursuant to Rule 12(b)(1) and 12(b)(2) of the Federal Rules of Civil

8  Procedure because of lack of subject matter jurisdiction and failure to plead jurisdiction over CSIRO.

9  This motion is based upon the Notice of Motion, the Memorandum of Points and Authorities, the

10 Declaration of Denis Redfern, all other pleadings and papers submitted in this action, and any

11 arguments of counsel and any other evidence which may be presented at or before the hearing on these

12 motions.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

                                                                                              Page

I.     INTRODUCTION ................................................................................................1

II.    STATEMENT OF FACTS ...................................................................................2

       A.     CSIRO Is A Government Agency .............................................................2

       B.     There Was No Threat Of Litigation Against Intel Corporation ..................3

       C.     There Was No Threat Of Litigation Against Dell, Inc. ..............................4

III.   CONTROLLING LAW ........................................................................................5

       A.     Plaintiffs Bear The Burden Of Proving Jurisdiction ..................................5

       B.     The Declaratory Judgment Act Provides Limited Article III
              Jurisdiction ...........................................................................................5

       C.     There Must Be An Objectively Reasonable Apprehension Of
              Imminent Suit In Order To Establish Article III Jurisdiction Over A
              Patent Dispute .......................................................................................6

       D.     The Sole Possible Basis For Jurisdiction Over CSIRO Is Under 28
              U.S.C. § 1330 ........................................................................................8

IV.    ARGUMENT .....................................................................................................9

       A.     Intel Had No Objectively Reasonable Apprehension Of Imminent Suit.........9

       B.     Dell Had No Objectively Reasonable Apprehension of Imminent Suit........11

       C.     Intel And Dell Cannot Find Support In CSIRO's Suit Against Buffalo,
              Since Buffalo Refused To Engage In Negotiations With CSIRO...................12

       D.     CSIRO Is Immune To Suit By Intel ........................................................14

       E.     Plaintiffs Brought This Litigation For An Improper Purpose.......................15

V.     CONCLUSION .................................................................................................16

1

# TABLE OF AUTHORITIES

2
<u>Page</u>

3
**Cases**

4
*Argentine Republic v. Amerada Hess Shipping Corp.*,
  488 U.S. 428, 102 L. Ed. 2d 818, 109 S. Ct. 683 (1989)..................... 14

5

6
*Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*,
  846 F.2d 731 (Fed. Cir. 1988) ............................................. 10

7
*Assn. of Am. Med. Colleges v. United States*,
  217 F.3d 770 (9th Cir 2000) .............................................. 5

8

9
*BP Chemicals, Ltd. v. Union Carbide Corp.*,
  4 F.3d 975 (Fed. Cir. 1993) .............................................. 5

10
*Cedars-Sinai Medical Ctr. v. Watkins*,
  11 F.3d 1573 (Fed. Cir. 1993) ........................................... 5

11

12
*Century Indus. v. Wenger Corp.*,
  851 F. Supp. 1260 (S.D. Ind. 1994) ...................................... 7

13
*EMC Corp. v. Norand Corp.*,
  89 F.3d 807 (Fed. Cir. 1996)..........................................6, 8, 16

14

15
*Foman v. Davis*,
  371 U.S. 178, 9 L. Ed. 222, 83 S. Ct. 227 (1962) ....................... 15

16
*Fresenius USA Inc. v. Transonic Systems Inc.*,
  207 F. Supp. 2d 1009 (N.D. Cal. 2001) .................................. 7

17

18
*Gen-Probe, Inc. v. Vysis, Inc.*,
  359 F.3d 1376 (Fed. Cir. 2004) ......................................... 6

19
*Goodyear Tire & Rubber Co. v. Releasomers, Inc.*,
  824 F.2d 953 (Fed. Cir. 1987) .......................................... 6

20

21
*Intellectual Property Development Inc. v. TCI Cablevision of California Inc.*,
  248 F.3d 1333 (Fed. Cir. 2001) ......................................... 10

22
*Intercontinental Dictionary Series v. de Gruyter*,
  822 F. Supp. 662 (C.D. Cal. 1993) ...................................... 15

23

24
*Joseph v. Office of Consulate General of Nigeria*,
  830 F.2d 1018 (9th Cir. 1987) .......................................... 14

25
*Kokkonen v. Guardian Life Ins. Co. of America*,
  511 U.S. 375 (1994) .................................................... 5

26

27
*Kustom Signals Inc. v. Applied Concepts Inc.*,
  41 U.S.P.Q.2d 1048 (D. Kan. 1996) ...................................... 7

28

1

**TABLE OF AUTHORITIES (con't)**

2

<u>Page</u>

3    *Livorsi Marine Inc. v. Nordskog Publishing Inc.,*
         268 F.Supp.2d 994 (N. D. Ill. 2003) ................................................................. 7
4

5    *Md. Cas. Co. v. Pac. Coal & Oil Co.,*
         312 U.S. 270 (1941) .......................................................................................... 6

6    *Monroe v. Williams,*
         705 F. Supp. 621 (D.D.C. 1988) ..................................................................... 15
7

8    *Moore v. The United Kingdom,*
         384 F.3d 1079 (9th Cir. 2004) .......................................................................... 9

9    *O'Hagins, Inc. v. M5 Steel Mfg., Inc.,*
         276 F. Supp. 2d 1020 (N.D. Cal. 2003) ........................................................... 5
10

11   *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha,*
         57 F.3d 1051 (Fed. Cir. 1995) .......................................................................... 7

12   *Premo Pharmaceutical Laboratories, Inc. v. Pfizer Pharmaceuticals, Inc.,*
         465 F. Supp. 1281 (S.D.N.Y. 1979) ............................................................... 13
13

14   *Republic of Austria v. Altmann,*
         541 U.S. 677, 159 L. Ed. 2d 1, 124 S. Ct. 2240 (2004) ................................... 8

15   *Ruggiero v. Compania Peruana de Vaperes "Inca Capac Yupanqui",*
         639 F.2d 872 (2nd Cir. 1981) ........................................................................... 8
16

17   *Ryobi Am. Corp. v. Peters,*
         815 F. Supp. 172 (D.S.C. 1993) ....................................................................... 7

18   *Saudi Arabia v. Nelson,*
         507 U.S. 349, 123 L. Ed. 2d 47, 113 S. Ct. 1471 (1993) ............................... 14
19

20   *Shell Oil Co. v. Amoco Corp.,*
         970 F.2d 885 (Fed. Cir. 1992) .......................................................................... 8

21   *Spectronics Corp. v. H.B. Fuller Co.,*
         940 F.2d 631 (Fed. Cir. 1991) ..................................................................... 6, 16
22

23   *Stock West, Inc. v. Confederated Tribes,*
         873 F.2d 1221 (9th Cir. 1989) .......................................................................... 5

24   *Teva Pharmaceuticals USA Inc. v. Pfizer Inc.,*
         395 F.3d 1324 (Fed. Cir. 2005) ................................................................6, 7, 11
25

26   *Tosco Corp. v. Communities for a Better Env't,*
         236 F.3d 495 (9th Cir. 2001) ............................................................................ 5

27   *Verlinden B.V. v. Cent. Bank of Nigeria,*
         461 U.S. 480, 76 L. Ed. 2d 81, 103 S. Ct. 1962 (1983) ................................... 8
28

# TABLE OF AUTHORITIES (con't)

Page

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995)..................................................................................................... 6

**Statutes**

28 U.S.C. § 1330 ............................................................................................. 1, 8, 13, 14

28 U.S.C. § 1602 ..................................................................................................... 14

28 U.S.C. § 1605 ....................................................................................................... 1

28 U.S.C. § 1605(a)(2)............................................................................................ 14

28 U.S.C. § 1608(b) ............................................................................................... 14

28 U.S.C. § 1608(d) ............................................................................................... 14

28 U.S.C. § 2201(a) ................................................................................................. 5

**Rules**

Rule 11 of the Federal Rules of Civil Procedure................................................... 10

Rule 12(b)(1) of the Federal Rules of Civil Procedure........................................... 4

1  **I.       INTRODUCTION**

2          Intel Corporation and Dell, Inc. ("Plaintiffs") should have known better.  They filed a

3  Complaint for Declaratory Judgment ("Complaint") against the Commonwealth Scientific and

4  Industrial Research Organisation ("CSIRO") without having any objectively reasonable apprehension

5  of an imminent lawsuit.  Therefore, this Court lacks subject matter jurisdiction under the Declaratory

6  Judgment Act.  Further, CSIRO is immune from any action by Intel by virtue of the Foreign Sovereign

7  Immunities Act.  This action must be dismissed.

8          The federal courts are courts of limited jurisdiction.  Subject matter jurisdiction exists over

9  requests for declaratory relief only in special circumstances — specifically, when a plaintiff can

10 demonstrate an objectively reasonable apprehension of an <u>imminent</u> lawsuit.  Lacking such a showing,

11 there is no dispute ripe for review, and no Article III jurisdiction.

12         Here, there have been no communications whatsoever between Intel and CSIRO concerning

13 the patent-in-suit — U.S. Patent No. 5,487,069 (the "'069 Patent").  No threats, no accusations of

14 infringement, no licensing discussions, no letters, no telephone calls — nothing.  (Redfern Decl., ¶ 7.)

15 Intel's attempt to invoke this Court's authority to resolve a non-existent dispute is so completely

16 unjustified that this Court should utilize its inherent authority to sanction Intel for the burden it has

17 placed on this Court and CSIRO in addressing a claim from Intel.

18         Dell and CSIRO are engaged in licensing negotiations regarding the '069 Patent.  Those

19 negotiations have been cordial, and have not been broken off by either party.  Further, CSIRO has

20 never made any threat to sue Dell.  As a matter of well-established law, there is no subject matter

21 jurisdiction under the Declaratory Judgment Act on such facts.

22         As a separate matter, Intel also must be dismissed under the Foreign Sovereign Immunities

23 Act.  CSIRO is an agency of the Australian government.  The exclusive basis for jurisdiction over an

24 agency of a foreign government is 28 U.S.C. § 1330.  Intel did not plead jurisdiction under that statute,

25 nor did it plead any of the exceptions to the jurisdictional immunity of a foreign state under 28 U.S.C.

26 § 1605.  Nor could it.  The only conceivable exception would be if CSIRO had engaged in

27 negotiations with Intel in the United States regarding the '069 Patent, and no such negotiations ever

28 took place.  Since Intel has not properly pled jurisdiction over CSIRO, and cannot amend to cure the

1  jurisdictional defect in the pleading, Intel should also be dismissed on this basis.

2          CSIRO believes that Intel and Dell filed their Complaint in an attempt to disrupt ongoing

3  litigation between CSIRO and Buffalo Technology (USA), Inc. and Buffalo, Inc. in the Eastern

4  District of Texas.  Intel and Dell, and Microsoft, Apple Computer, Inc.,[1] Hewlett-Packard Co., and

5  Netgear, Inc., filed separate declaratory judgment actions on the same day in the Northern District of

6  California, and thereafter moved the Panel on Multidistrict Litigation to transfer the pending action in

7  the Eastern District of Texas to California.  Could any reasonable person believe that all of these

8  declaratory judgment plaintiffs developed a reasonable apprehension of imminent suit at exactly the

9  same time?  Notably, their complaints are devoid of any facts that would show that they had any

10 sudden, simultaneous reason for becoming apprehensive of a suit by CSIRO (let alone any facts

11 showing any reasonable apprehension whatsoever).

12         This simultaneous filing of declaratory judgment actions was obviously collusive, and done

13 simply in an attempt to derail and disrupt CSIRO's pending action in Texas and deprive CSIRO of its

14 choice of forum, a forum that was completely reasonable since Buffalo Technology (USA), Inc. is

15 located in Austin, Texas.  And the actions were not only filed for an improper purpose, they were

16 themselves improper since the Plaintiffs did not have any objectively reasonable basis for believing

17 that they were about to be sued by CSIRO or that this Court had proper jurisdiction.  Respectfully, the

18 Court should not countenance such a blatant attempt to manipulate the judicial system and cavalier

19 disregard for the law.

20 **II.    STATEMENT OF FACTS**

21         **A.    CSIRO Is A Government Agency**

22         Australia is a democratic, federal-state system recognizing the British monarch as sovereign.

23 Australia's chief of state is Queen of Australia, ELIZABETH II, who is represented by a Governor-

24 General.  The head of government is the Prime Minister.  There are no direct elections as to the

25 executive governmental positions.  The monarch is hereditary; the Governor-General is appointed by

26 _____

27 [1] Apple has voluntarily dismissed its case.

28

1  the monarch on the recommendation of the Prime Minister; and following legislative elections, the

2  leader of the majority party or leader of a majority coalition is sworn in as Prime Minister by the

3  Governor-General.

4        CSIRO is an agency of the government of the Commonwealth of Australia.  (Redfern Decl., ¶

5  2.)  CSIRO was established by the Science and Industry Research Act of 1949 of the Commonwealth

6  of Australia (the "Act").  (Redfern Decl., Exh. 1.)  The Minister appointed by the Governor-General to

7  administer the Act is currently the Minister for Education, Science and Training — The Hon. Dr.

8  Brendan Nelson MP (the "Minister").  (*Id.*, Exh. 2 at 12.)

9        CSIRO is the national science agency of the Australian government.  (*Id.* at 1.)  CSIRO's

10  charter is to conduct research to assist Australian industry, further the interests of the Australian

11  community, contribute to the achievement of Australian national interests, and any other purpose

12  determined by the Minister.  (*Id.*, Exh. 1 at 3.)  The Chief Executive of CSIRO is appointed by the

13  Governor-General (*id.* at 7), and the functions of the Chief Executive are constrained by and subject to

14  the approval of the Minister in numerous respects.  (*See, e.g., id.* at 5, 7, 8, 9, 12, 23.)  The Board of

15  the Organisation is appointed by the Governor-General (*id.* at 13) and operates under the direction of

16  the Minister.  (*Id.* at 12, 14.)

17        Money is appropriated by Parliament to fund CSIRO, and paid according to the determinations

18  of the Minister of Finance.  (*Id.* at 22.)  The majority of CSIRO's funding is provided by the

19  government.  (*Id.*, Exh. 2 at 4.)  CSIRO's budget as of June 2004 was approximately $900 million

20  AUD, of which some $568 million was from Parliamentary appropriation, and some $320 million

21  from other sources, including the Australian private sector and Australian Federal and State

22  governments.  (*Id.*)  CSIRO is not subject to taxation under any law of the Commonwealth or of a

23  State or Territory.  (*Id.*, Exh. 1 at 23.)

24      **B.**    **There Was No Threat Of Litigation Against Intel Corporation**

25        The facts regarding communications between CSIRO and Intel Corporation regarding the

26  '069 Patent are simple — there were no communications.  CSIRO never made any "threat" or

27  "demand" to Intel, never accused Intel of infringement, and never even suggested that Intel might need

28  a license to the '069 Patent.  (Redfern Decl., ¶ 7.)  Nor has Intel ever contacted CSIRO.

### C.      There Was No Threat Of Litigation Against Dell, Inc.

CSIRO has been engaged in licensing negotiations with Dell, Inc. since January, 2004.  During the course of the discussions, Dell asked for and was provided with both legal and technical information.  The negotiations were cordial and professional.  No threats of litigation, nor anything remotely resembling such a threat, was made by CSIRO to Dell.  CSIRO has never terminated licensing negotiations with Dell, and Dell has never terminated licensing negotiations with CSIRO. (Redfern Decl., ¶¶ 9-10.)

CSIRO wrote to Dell on January 23, 2004, to advise Dell of the '069 patent and open licensing negotiations.  (Redfern Decl., Exh. 3.)  Dell responded on February 13, 2004, by suggesting that CSIRO contact Dell's suppliers.  (*Id.*, Exh. 4.)  Subsequently Dell undertook an analysis of the '069 Patent, and in May and June of 2004, there were discussions by telephone, as reflected by email traffic.  (*Id.*, Exh. 5.)  On June 10, 2004, CSIRO sent Dell a license agreement term sheet.  (*Id.*, Exh. 6.)  On June 29, 2004, CSIRO sent an outline of CSIRO's intended presentation to Dell.  (*Id.*, Exh. 7.) There was a telephone conference in June 2004, followed by another in August 2004, as reflected in email communications.  (*Id.*, Exhs. 8 and 9.)  On September 28, 2004, CSIRO sent Dell a formal licensing proposal.  (*Id.*, Exh. 10.)  In early October 2004, there were various email communications about setting up a telephone conference which ultimately took place on October 15, 2004.  (*See, e.g.*, *id.* 11, 12  and 13.)  During October and November 2004, there were various follow-up communications concerning questions about issues raised during the telephone conference.  (*Id.*, Exhs. 14 to 19.)  In December 2004, CSIRO arranged to have a technical expert discuss certain issues with Dell.  (*Id.*, Exh. 20.)  That conference call took place on December 15, 2004.  (*Id.*, ¶ 28.)  On December 20, 2004, CSIRO wrote to Dell extending the date for Dell to respond to CSIRO's outstanding licensing offer.  (*Id.*, Exh. 21.)  The last communication between CSIRO and Dell — prior to Dell's lawsuit — was an email from Dell's counsel, Mr. Peterman to Richard Hsu, dated February 7, 2005.  (*Id.*, Exh. 22.)  In that email Mr. Peterman again suggested that CSIRO should look to the chip manufacturers for the payment of patent royalties.

1  At no time did Dell indicate that it wished to terminate negotiations with CSIRO.  On the

2  contrary, CSIRO understood that Dell continued to be interested in pursuing a license to the '069

3  patent.  (*Id.*, ¶ 31.)

4  **III.    CONTROLLING LAW**

5      **A.    Plaintiffs Bear The Burden Of Proving Jurisdiction**

6      The plaintiffs have the burden of proving jurisdiction.  *Tosco Corp. v. Communities for a*

7  *Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).   The Court must presume a lack of jurisdiction until

8  and unless the plaintiffs prove otherwise.  *O'Hagins, Inc. v. M5 Steel Mfg., Inc.*, 276 F. Supp. 2d 1020,

9  1023 (N.D. Cal. 2003) (*citing Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir.

10  1989).

11      Where motion under Rule 12(b)(1) denies or controverts jurisdictional allegations, the facts

12  "underlying the controverted jurisdictional allegations are in dispute and are subject to fact finding by

13  the district court." *Cedars-Sinai Medical Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993); *see*

14  *also Assn. of Am. Med. Colleges v. United States*, 217 F.3d 770, 778 (9th Cir. 2000).  Accordingly,

15  Plaintiffs here may not rest on their allegations, but must produce facts that support Article III

16  jurisdiction.

17      **B.    The Declaratory Judgment Act Provides Limited Article III Jurisdiction**

18          Federal courts are courts of limited jurisdiction.  They possess only that power

19  authorized by Constitution and statute, which is not to be expanded by judicial
        decree.  It is to be presumed that a cause lies outside this limited jurisdiction,

20  and the burden of establishing the contrary rests upon the party asserting
        jurisdiction.

21  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citations omitted).

22      The Declaratory Judgment Act provides for subject matter jurisdiction by the federal courts

23  only in the case of an "actual controversy."  28 U.S.C. § 2201(a).  Thus, the grant of subject matter

24  jurisdiction under Article III of the Constitution is strictly circumscribed.  The "actual controversy"

25  must be real, substantial, and immediate.  *BP Chemicals, Ltd. v. Union Carbide Corp.*, 4 F.3d 975,

26  977 (Fed. Cir. 1993).  "Basically, the question in each case is whether the facts alleged, under all

27  circumstances, show that there is a substantial controversy, between parties having adverse legal

28  interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

1 | *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

2 |      In the absence of an actual controversy the court is without jurisdiction to hear the case and the

3 | action must be dismissed.  *Gen-Probe, Inc. v. Vysis, Inc.*, 359 F.3d 1376, 1382 (Fed. Cir. 2004).  Even

4 | if an actual controversy exists, the court may nevertheless decline to accept jurisdiction.  *EMC Corp.*

5 | *v. Norand Corp.*, 89 F.3d 807, 813 (Fed. Cir. 1996) (affirming decline of jurisdiction where plaintiffs

6 | filed declaratory judgment action for improper purpose of gaining advantage in licensing

7 | negotiations).  *See also Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (reaffirming that since its

8 | inception, "the Declaratory Judgment Act has been understood to confer on federal courts unique and

9 | substantial discretion in deciding whether to declare the rights of litigants"); *Spectronics Corp. v. H.B.*

10 | *Fuller Co.*, 940 F.2d 631, 634 (Fed. Cir. 1991) ("When there is no actual controversy, the court has no

11 | discretion to decide the case.  When there is an actual controversy and thus jurisdiction, the exercise of

12 | that jurisdiction is discretionary.")

### C.   There Must Be An Objectively Reasonable Apprehension Of Imminent Suit In Order To Establish Article III Jurisdiction Over A Patent Dispute

15 |      Federal Circuit law governs the question of whether there is an actual controversy in patent

16 | cases.  *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 955 n.3 (Fed. Cir. 1987).

17 |      The Federal Circuit has stated a two-part inquiry to determine if there is an actual controversy

18 | and thus a basis for jurisdiction.  "There must be both (1) an explicit threat or other action by the

19 | patentee which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that

20 | it will face an infringement suit; and (2) present activity by the declaratory judgment plaintiff which

21 | could constitute infringement, or concrete steps taken with the intent to conduct such activity."  *Teva*

22 | *Pharmaceuticals USA Inc. v. Pfizer Inc.*, 395 F.3d 1324, 1332 (Fed. Cir. 2005).

23 |      The Federal Circuit has made it plain that for jurisdiction to lie under the Declaratory Relief

24 | Act, there must be an *imminent* threat of suit.  As recently stated in *Teva*:

> In order for this case to be one fit for judicial review, Teva must be able to demonstrate that it has a reasonable apprehension of *imminent* suit.  Whether there is an "actual controversy" between parties having adverse legal interests depends upon whether the facts alleged show that there is a substantial controversy between the parties "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Maryland Casualty*, 312 U.S. at 273. This requirement of imminence reflects the Article III mandate that the injury in

fact be "concrete," and "actual or imminent, not conjectural or hypothetical." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

*Id.* at 1333 (emphasis in original).

The apprehension of suit must be supported by objective facts, and not merely subjectively held. As stated in *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053-54, (Fed. Cir. 1995), "[t]he 'reasonable apprehension of suit' test requires more than the nervous state of mind of a possible infringer; it requires that the objective circumstances support such an apprehension."

"When there are proposed or ongoing license negotiations, a litigation controversy normally does not arise until the negotiations have broken down." *Id.* at 1053. *See also Livorsi Marine Inc. v. Nordskog Publishing Inc.*, 268 F.Supp.2d 994, 998 (N. D. Ill. 2003) ("An actual controversy, in the context of licensing negotiations, does not exist until licensing negotiations have broken down . . . As Livorsi admitted, 'neither party had expressly rejected all possibility of a license at the time Livorsi filed this action.'"); *Fresenius USA Inc. v. Transonic Systems Inc.*, 207 F. Supp. 2d 1009, 1012 (N.D. Cal. 2001) (Despite letter from "enforcement" counsel suggesting current and future infringement, and an extensive discussion of a lawsuit to enforce the same patent against another party, "In light of Transonic's offer to discuss resolution of the dispute, these statements do not create an imminent threat of litigation."); *Kustom Signals Inc. v. Applied Concepts Inc.*, 41 U.S.P.Q.2d 1048, 1052 (D. Kan. 1996) ("KSI insists that ACI's license proposal was unreasonable and that negotiations had broken down. As in *Phillips*, however, KSI did not so inform ACI, and thus ACI could reasonably have believed that license negotiations were still ongoing. . . . KSI has not shown that ACI did anything more than exercise its lawful commercial prerogatives regarding its patent claims."); *Century Indus. v. Wenger Corp.,* 851 F. Supp. 1260, 1264 (S.D. Ind. 1994) (letter stating that plaintiff's conduct was within the patent's scope and that defendant would fully enforce the patent did not give rise to a reasonable apprehension of suit); *Ryobi Am. Corp. v. Peters*, 815 F. Supp. 172, 174 (D.S.C. 1993) (reasonable apprehension of suit did not arise from a letter stating that the product was apparently within the patent and oral representations as to the strength of the patent holder's position).

And it is simply irrelevant that the specter of possible litigation may hang over any patent

COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION CASE NO.C 05-01886 MJJ

7

1  licensing negotiation.  As the Federal Circuit has stated:

2
3       To be sure, any time parties are in negotiation over patent rights, the possibility of
        a lawsuit looms in the background.  No patent owner with any sense would open
        negotiations by assuring his opposite party that he does not intend to enforce his
4       patent rights under any circumstances.  The threat of enforcement — either
        directly by the patentee or indirectly by a third party to whom the patentee
5       licenses or sells the patent — is the entire source of the patentee's bargaining
        power.  Thus, it is unrealistic to suggest that some negotiating patentees intend to
        enforce their patents while some do not, and that the first group is subject to
6       declaratory judgment actions while the second is not.

7  *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed. Cir. 1996) (citation omitted).

8       Indeed, a party in license negotiations may take positions in defense of its patent and its right to

9  enforce its patent without triggering subject matter jurisdiction for a declaratory judgment action -- any

10 other rule would render such negotiations toothless.  As the Federal Circuit stated in *Shell Oil Co. v.*

11 *Amoco Corp.*, 970 F.2d 885, 889 (Fed. Cir. 1992):

12
        Amoco's use of language to indicate that Shell's activities "fall within," are
        "covered by," and are "operations under" Amoco's patent fall short of alleging
13      infringement.  The language closest to constituting a threat occurred when Shell
        asked if Amoco intended to enforce its patent, and Amoco answered "yes."
14      However, under the circumstances, that answer was reflexive and obligatory.  To
        have answered "no" would have potentially given Shell free reign to infringe
15      Amoco's patent.  If Amoco wanted to continue to negotiate a license with Shell,
        its response was necessary.
16

17 **D.      The Sole Possible Basis For Jurisdiction Over CSIRO Is Under 28 U.S.C. § 1330**

18      As so nicely once stated by Judge Friendly:  "The courts must learn to accept that, in place of

19 the familiar dichotomy of federal question and diversity jurisdiction, the [FSIA] has created a tripartite

20 division--federal question cases, diversity cases and actions against foreign states." *Ruggiero v.*

21 *Compania Peruana de Vaperes "Inca Capac Yupanqui"*, 639 F.2d 872, 876 (2nd Cir. 1981).

22      The Foreign Sovereign Immunities Act ("FSIA") is:

23
        a comprehensive statute containing a "set of legal standards governing claims of
        immunity in every civil action against a foreign state or its political sub-divisions,
24      agencies, or instrumentalities."  The Act "codifies, as a matter of federal law, the
        restrictive theory of sovereign immunity," and transfers primary responsibility for
25      immunity from the Executive to the Judicial Branch.

26 *Republic of Austria v. Altmann*, 541 U.S. 677, 691, 159 L. Ed. 2d 1, 124 S. Ct. 2240 (2004) (quoting

27 *Verlinden  B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488, 76 L. Ed. 2d 81, 103 S. Ct. 1962 (1983))

28 (citations omitted).

As the Ninth Circuit has explained:

> The FSIA thus ordinarily "'provides the exclusive source of subject matter jurisdiction over suits involving foreign states and their instrumentalities,'" as "'foreign states are presumed to be immune from the jurisdiction of Unites States courts unless one of the Act's exceptions to immunity applies.'"

*Moore v. The United Kingdom*, 384 F.3d 1079, 1082 (9th Cir. 2004) (citations omitted).

As the Ninth Circuit further explained:

> Subject-matter jurisdiction for claims brought against foreign states under the FSIA is conferred by 28 U.S.C. § 1330(a), which provides that
>
> > The district courts shall have original jurisdiction . . . of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.
>
> Thus, the federal courts have been held to have jurisdiction over foreign states as to defendants under the FSIA only when that state is not entitled to immunity -- that is, when one of the statutory exceptions applies.  *See, e.g.*, *Altmann*, 124 S. Ct. at 2249 ("'At the threshold of every action in a district court against a foreign state, . . . the court must satisfy itself that one of the exceptions applies,' as 'subject matter jurisdiction in any such action depends' on that application." (quoting *Verlinden*, 461 U.S. at 493-94)); *Saudi Arabia v. Nelson*, 507 U.S. 349, 355, 123 L. Ed. 2d 47, 113 S. Ct. 1471 (1993) ("Unless a specified exception applies, a federal court lacks subject matter jurisdiction over a claim against a foreign state.")

*Moore*, 384 F.3d at 1082-83 (footnotes omitted).

## IV.    ARGUMENT

### A.    Intel Had No Objectively Reasonable Apprehension Of Imminent Suit

Intel had no objectively reasonable apprehension of suit by CSIRO.  CSIRO never made any allegation of infringement against Intel, never suggested that Intel should take a license, and indeed, never had any communications at all with Intel about the '069 Patent.

As a basis for jurisdiction, Intel alleges in the Complaint that:  "Intel is under a reasonable apprehension that it will face suit for infringement by CSIRO, or otherwise be obligated to defend or indemnify one or more Intel customers against CSIRO's '069 patent infringement claims."  Complaint at ¶ 13.

Since CSIRO has never suggested in any way that it might sue Intel, the first part of this allegation is a sham.  And the second part of the allegation presents no legal basis for jurisdiction.

1   Intel's allegation really is that it is apprehensive of a claim of indemnity from a customer, and if it

2   declines that claim, that it might be sued *by that customer*, not by CSIRO.

3   The Federal Circuit has already determined that any such remote claim is not a basis for

4   subject matter jurisdiction.  As that court stated:

5           TCI-California also contends that it could be required to indemnify an
        entity that potentially could be held liable in a different case for infringing the
6       '202 patent.  If TCI-California's interests are affected by a different suit regarding
        the '202 patent, then TCI-California should join that action as a party, for
7       example, pursuant to Federal Rule of Civil Procedure 19(a)(2)(i).  Further, part of
        the declaratory justiciability test for patent rights requires action by the patent
8       owner that creates "reasonable apprehension" on the part of the declaratory
        plaintiff that it will face an infringement suit.  A suit filed against a different
9       party, even if TCI-California could potentially be required to indemnify that
        party, is not a suit that TCI-California itself faces.  Therefore, the district court
10      correctly determined that it lacks jurisdiction despite TCI-California's indemnity
        concerns.

11  *Intellectual Property Development Inc. v. TCI Cablevision of California Inc.*, 248 F.3d 1333, 1341-42

12  (Fed. Cir. 2001) (emphasis added, footnotes omitted)[2].

13          Intel may seek to rely on a footnote in *TCI* that states:  "We recognize that 'apprehension' also

14  may apply to a declaratory plaintiff's customers as discussed in *Arrowhead Industrial Water, Inc. v.*

15  *Ecolochem, Inc.*, 846 F.2d 731, 6 USPQ2d 1685 (Fed. Cir. 1988)."  *Id.*, 248 F.3d at 1333, fn. 8.  But

16  in *Arrowhead* the patentee had sent a letter to a customer of Arrowhead that stated in part:  "Please be

17  advised that Arrowhead Industrial Water is not licensed to use our process and we would therefore

18  consider any use a direct patent infringement.  Unfortunately, any such infringement could possibly

19  involve Virginia Power as well so I believe it is valuable for you to have information on this patent in

20  order to protect yourself and eliminate any potential conflict."  *Arrowhead*, 846 F.3d at 733.  The

21  Federal Circuit criticized such "scare-the-customer-and-run tactics."  *Id.* at 735.  No such situation

22  applies here.  CSIRO has neither directly accused Intel of infringement, nor made such an accusation

23  indirectly in assertions made to Intel's customers.  And since CSIRO does not itself make and sell

24  wireless devices, it certainly is not using its patent to try to divert business to itself from a competitor -

25

26

27  [2] Even assuming such a claim were sufficient, CSIRO has not sued any Intel customer.  (Redfern
    Decl., ¶ 35.)

28

1   - the conduct that the Federal Circuit found significant in *Arrowhead*.

2     Here, Intel simply cannot show "an explicit threat or other action by the patentee which creates

3   a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an

4   infringement suit." *Teva Pharmaceuticals USA Inc. v. Pfizer Inc.*, 395 F.3d 1324, 1332 (Fed. Cir.

5   2005).

6     Further, not only can Intel not meet the first prong of the jurisdictional test, it has not pled any

7   facts showing that it can meet the second prong -- "present activity by the declaratory judgment

8   plaintiff which could constitute infringement, or concrete steps taken with the intent to conduct such

9   activity." *Teva Pharmaceuticals USA Inc. v. Pfizer Inc.*, 395 F.3d 1324, 1332 (Fed. Cir. 2005).   To

10  meet its burden of proving a basis for jurisdiction, Intel must also establish what products or acts that

11  it believes could constitute infringement, and to the extent that it seeks to rely on indemnity

12  obligations (and were it permitted to do so as a matter of law) the contractual basis on which it would

13  be obligated to indemnify a specific party that itself can show an objectively reasonable apprehension

14  of imminent suit.

15    Not only does this Court lack subject matter jurisdiction under the Declaratory Relief Act to

16  entertain an action by Intel, but Intel's filing of this action is so lacking in a factual or legal basis that

17  the filing is a plain violation of Rule 11 of the Federal Rules of Civil Procedure.

18    **B.**  **Dell Had No Objectively Reasonable Apprehension of Imminent Suit**

19    As the facts show, CSIRO and Dell were engaged in licensing negotiations.   The tone of those

20  negotiations was cordial.   There were no threats, no acrimonious communications, and not a single

21  suggestion that CSIRO was planning to sue Dell.

22    In the Complaint, Dell cites to a letter of September 28, 2004, concerning a "Voluntary

23  Licensing Program," and misleadingly quotes that letter as extending an offer which expired on May

24  1, 2005, after which "licenses . . . . will not be available."  (Complaint at ¶ 10.)[3]  What the letter

25

26  _____

27  [3] Defendants use of an ellipsis to delete five words from the phrase in a clumsy attempt to alter its meaning, is questionable to say the least.

28

1   actually said was that after the stated time had elapsed "licenses under *this* Voluntary Licensing

2   Program will not be available." (Redfern Decl., Exh. 10, emphasis added). The language omitted

3   from the Complaint makes, of course, a world of difference. The fact that a specific, given offer

4   would have expired in no way represents the termination of license negotiations, but rather simply the

5   lapse of a specific offer. Either Dell or CSIRO could present a different offer. Indeed, this was

6   *negotiation* — there is nothing that shows that CSIRO would not have actually entertained exactly that

7   same offer from Dell after May 1, 2005. Indeed, CSIRO would be willing to extend that same offer to

8   Dell as of this date.

9           Negotiations here had not come to any impasse or broken off, and no threats had been made.

10  This was not a case of a competing rush to the courthouse; CSIRO has not sued Dell, and CSIRO has

11  no present plans to file suit against Dell. (Redfern Decl., ¶ 31.) While it is possible that the day may

12  come when CSIRO will have to enforce its patent in court against Dell, that date has not arrived and is

13  not even on the horizon. CSIRO hopes that Dell will continue to engage in license negotiations, and

14  hopes that the results of its litigation against Buffalo will serve to alleviate any doubts that Dell or

15  others in the industry may have about the validity of CSIRO's patent.

16          The law, as reviewed above, is plain. The law provides a safe harbor for license negotiations,

17  and such negotiations, without considerably more, do not create subject matter jurisdiction under the

18  Declaratory Judgment Act. Here, not only were there no threats of litigation by CSIRO, but

19  negotiations had not broken off. There is no Article III jurisdiction here, and the Complaint must be

20  dismissed.

21

22  **C.    Intel And Dell Cannot Find Support In CSIRO's Suit Against Buffalo, Since
            Buffalo Refused To Engage In Negotiations With CSIRO**

23          To the extent that Intel or Dell may attempt to rely on CSIRO's pending suit against Buffalo

24  Technology (USA) and Buffalo, Inc. in the Eastern District of Texas (Buffalo Technology (USA) is

25  located in Austin, Texas), this litigation fails to provide any support for objectively reasonable

26  apprehension on the part of Intel or Dell that they are imminently likely to be sued. Indeed, if

27  anything, it stands for the opposite proposition.

28          CSIRO initiated licensing discussions with Buffalo by letter dated September 4, 2003.

1  (Redfern Decl., Exh. 23.)  Buffalo did not respond until January, 2004 after another letter from

2  CSIRO's counsel.  Buffalo suggested that CSIRO should address its patent claims to Broadcom, its

3  chip supplier.  (*Id.*, Exh. 24.)  Between January and December, 2004 CSIRO and Buffalo exchanged

4  a number of communications.  (*Id.*, ¶ 33.)  Buffalo refused to meet with CSIRO.  (*Id.*)  On December

5  6, 2004, Buffalo informed CSIRO that it was terminating the negotiations and did not wish to hear

6  further from CSIRO.  (*Id.*, Exh. 25.)  Faced with an intransigent party which refused to negotiate,

7  CSIRO filed suit for patent infringement against Buffalo on February 2, 2005.

8         CSIRO does not have a history of litigious conduct.  But even if it did, that would not be a

9  proper basis for jurisdiction.  *Premo Pharmaceutical Laboratories, Inc. v. Pfizer Pharmaceuticals,*

10  *Inc.,* 465 F. Supp. 1281, 1283-84 (S.D.N.Y. 1979) ("Even assuming with [plaintiff] that [defendant]

11  has been a litigious plaintiff, its record in past suits does not by itself show that it has charged

12  infringement of the patents challenged in this suit.  At most a record of infringement suits by itself

13  shows that the defendant may precipitate an actual controversy sometime in the future, not that it has

14  done so already.")

15         What the record shows here is that CSIRO has not "threatened" anyone.  It has merely sought

16  to engage in negotiations regarding the '069 patent, and to obtain reasonable compensation for its

17  patent rights.  The *only* company that CSIRO has sued is a company that refused to negotiate.

18  Plaintiffs cannot reasonably rely on a single, isolated suit that was provoked by an unreasonable and

19  intransigent response to the very patient efforts of CSIRO to engage Buffalo in licensing negotiations

20  as a basis for an objectively reasonable apprehension of suit.  Indeed, if anything, these facts show that

21  Plaintiffs had no reasonable apprehension, since Intel had never even been contacted by CSIRO, and

22  CSIRO's negotiations with Dell were cordial and were not terminated by either party.  (Redfern Decl.,

23  ¶¶ 7, 9 and 31.)

24         Further, the fact that CSIRO is engaged in one suit would not lead to a logical conclusion that

25  it would engage in others — in fact, just the opposite.  If CSIRO had intended to sue any other parties

26  it readily could have.  Instead, CSIRO hopes that having its patent tested in the Buffalo litigation will

27  act — assuming as CSIRO expects that its patent is found to be infringed and not invalid — as an

28  incentive for other parties to take a license.  Therefore, the logical conclusion is that CSIRO would not

sue any others at least until the Buffalo litigation is resolved (which under the schedule set in the Eastern District of Texas, will not be until the latter part of next year), and only then if further license negations in the wake of that action should fail.

### D.   CSIRO Is Immune To Suit By Intel

A foreign state is immune from the jurisdiction of the courts in the United States, except as provided by sections 1605 to 1607 of the FSIA.  28 U.S.C. § 1604.  The definition of a foreign state includes its agencies and instrumentalities.  28 U.S.C. § 1603(a).

Since CSIRO is an agency of a foreign government, the sole and exclusive basis for jurisdiction over CSIRO as an entity lies in 28 U.S.C. § 1330.  *See Saudi Arabia v. Nelson*, 507 U.S. 349, 355, 123 L. Ed. 2d 47, 113 S. Ct. 1471 (1993); *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 438, 102 L. Ed. 2d 818, 109 S. Ct. 683 (1989).  As an agency of a foreign state, CSIRO is thus immune from suit unless one of the express statutory exceptions applies.  28 U.S.C. §§ 1330(a) and 1604.

The only conceivable exception to CSIRO's immunity from suit that might apply here is the commercial activity exception set forth in 28 U.S.C. § 1605(a)(2).   But as set forth above, CSIRO has engaged in no commercial dealings with Intel regarding the '069 Patent, and therefore Intel cannot plead any facts that permit it to ignore CSIRO's immunity.[4]  *See, e.g., Joseph v. Office of Consulate General of Nigeria*, 830 F.2d 1018, 1023 (9th Cir. 1987) (focus is on specific acts as a basis for commercial activity exception).   Since Intel can not plead facts showing an exception to CSIRO's immunity under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et seq., Intel's suit must be dismissed for this additional reason.

Intel may attempt to argue that CSIRO is not an agency of the Australian government, but any such argument is belied by its actions.   In responding to CSIRO's motion to quash, Intel argued that it had properly served CSIRO under 28 U.S.C. § 1608(b), which only applies if CSIRO is an agency of a foreign government.  (Docket no. 21.)   And if Intel contests the implications of its own actions and

---

[4] In contrast, as CSIRO and Dell have engaged in license negotiations, the exception arguably applies.

1  the obvious nature of CSIRO, the enabling Act of 1949, the appropriations by the Australian

2  government, and the management structure of CSIRO, and the statement under oath of Mr. Redfern

3  (*see* Redfern Decl., ¶ 2) are conclusive evidence of CSIRO's status as a government agency.  *See, e.g.,*

4  *Intercontinental Dictionary Series v. de Gruyter*, 822 F. Supp. 662, 672-74 (C.D. Cal. 1993).

5       Intel might seek to amend to plead jurisdiction under 28 U.S.C. § 1330.  But here, on the

6  factual record, such an opportunity to amend would be futile, and amendment should not be allowed.

7  *See Foman v. Davis*, 371 U.S. 178, 182, 9 L. Ed. 222, 83 S. Ct. 227 (1962); *Monroe v. Williams*, 705

8  F. Supp. 621, 623 (D.D.C. 1988) ("It has been repeatedly held that an amended complaint is 'futile' if

9  the complaint as amended would not survive a motion to dismiss.").

10       **E.       Plaintiffs Brought This Litigation For An Improper Purpose**

11       Neither Plaintiff, and particularly Intel, had any proper legal basis for bringing this action.

12  Indeed, it appears to have been brought for an improper purpose — to disrupt the ongoing litigation

13  between CSIRO and Buffalo in the Eastern District of Texas.  CSIRO's action against Buffalo

14  Technology (USA), Inc. (which is based in Austin, Texas) and Buffalo, Inc. (which is based in Japan)

15  was filed on February 2, 2005.  There has been an initial case management conference, initial

16  disclosures, mandatory infringement and invalidity disclosures under that Court's patent rules,

17  discovery has commenced (including third party discovery), and trial is set for August 14, 2006.

18       On June 10, 2005, Intel Corporation, Dell, Inc., and Hewlett-Packard Co. moved the Judicial

19  Panel on Multidistrict Litigation to transfer the case in the Eastern District of Texas to the Northern

20  District of California.  Microsoft Corporation, Netgear, Inc., and Hewlett-Packard Co. filed their own

21  motion to transfer on June 16, 2005.  These motions were filed without waiting for questions

22  concerning service to be resolved, without waiting for CSIRO to serve its responsive pleading, and

23  without waiting for this Court's jurisdiction to be resolved.  Since jurisdiction is patently lacking,

24  CSIRO believes that this Declaratory Judgment action by Intel and Dell was filed simply as a basis for

25  attempting to disrupt the ongoing litigation in Texas.

26       As the Federal Circuit summarized in *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 634

27  (Fed. Cir.), *cert. denied*, 502 U.S. 1013 (1991): "When there is no actual controversy, the court has no

28  discretion to decide the case.  When there is an actual controversy and thus jurisdiction, the exercise of

1  | that jurisdiction is discretionary." In *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813 (Fed. Cir. 1996),

2  | the Federal Circuit affirmed the decision of the district court in declining jurisdiction where the

3  | plaintiffs had filed declaratory judgment action for improper purpose of gaining advantage in licensing

4  | negotiations.

5  |   Here, the ulterior motive of Plaintiffs is even worse. Intel is no stranger to litigation in Texas,

6  | and Dell is based in Texas. The filing of their Declaratory Judgment action in the Northern District of

7  | California, followed quickly by an attempt to have the ongoing case in the Eastern District of Texas

8  | transferred to California, must be seen for what it is — a blatant attempt at manipulation of the judicial

9  | system and forum shopping. This is certainly not a proper ground for a Declaratory Judgment action,

10 | and on that independent basis, the Court should decline jurisdiction.

11 | **V. CONCLUSION**

12 |   Intel and Dell cannot meet their burden of establishing subject matter jurisdiction. When the

13 | actual facts are examined — as opposed to the regrettable rhetoric in their Complaint — CSIRO has

14 | never threatened either plaintiff with litigation. Indeed, it has never had any communications with

15 | Intel at all, and it has had only ordinary licensing negotiations with Dell which have not been broken

16 | off. There is no subject matter jurisdiction, and this action should be dismissed.

17 | DATED: August 1, 2005     Respectfully submitted,

18 |             TOWNSEND AND TOWNSEND AND CREW LLP

19 |

20 |            By: /s/ Daniel J. Furniss
   |               Daniel J. Furniss

21 |               Byron C. Cooper
   |               Gary H. Ritchey

22 |               Gregory S. Bishop
   |               Thomas F. Fitzpatrick

23 |               Attorneys for Defendant

24 |               COMMONWEALTH SCIENTIFIC AND INDUSTRIAL
   |               RESEARCH ORGANISATION

60535608 v1

25 |

26 |

27 |

28 |