IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTEL CORPORATION AND DELL, INC., | No. C-05-1886 MJJ |
| Plaintiffs, | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION, | |
| Defendant. | |

# INTRODUCTION

Before the Court is Defendant Commonwealth Scientific and Industrial Research Organisation's ("Defendant" or "CSIRO") motion to dismiss Plaintiffs Intel Corporation and Dell, Inc.'s Complaint. Defendant contends that Plaintiffs' claims should be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction. Defendant also contends that the lawsuit, as brought by Plaintiff Intel, should be dismissed because Defendant CSIRO, as an agency of a foreign government, is immune from suit by Intel pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602–1611.[1]  Finally, Defendant argues that Plaintiffs' action should be dismissed because it was filed for the improper purpose of disrupting ongoing litigation between CSIRO and Buffalo Technology (USA), Inc. and Buffalo, Inc. in the Eastern District of Texas. For the reasons set forth below, the Court **DENIES** Defendant's motion.

///

# FACTUAL BACKGROUND

Defendant CSIRO is Australia's national science agency – an arm of the Australian government. CSIRO is the assignee of United States Patent No. 5,487,069 (the "'069 patent"),

---

[1] Defendant also purports to bring its motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure but does not mention Rule 12(b)(2) anywhere in the text of its brief. Accordingly, the Court does not address any Rule 12(b)(2) motion here.

entitled "Wireless LAN." According to CSIRO, the patent covers the Institute of Electrical and Electronics Engineers ("IEEE") 802.11a and 802.11g standards for wireless local area networks. (*See* Denis Redfern Declaration ("Redfern Decl."), Ex. 7 at 6.)

In January 2004, CSIRO initiated licensing negotiations regarding the '069 patent with Plaintiff Dell, a customer of Plaintiff Intel. Dell manufactures, uses, or sells products that incorporate wireless networking components that implement or enable the implementation of the IEEE standards that are supposedly covered by the '069 patent. Dell purchases the wireless networking components from suppliers such as Plaintiff Intel. In response to CSIRO's efforts to negotiate a licensing agreement, Dell informed CSIRO that it does not design or manufacture the wireless networking components, but purchases them from suppliers, including Intel. Dell suggested that CSIRO contact its suppliers directly. (Redfern Decl., Ex. 4.) CSIRO continued, instead, to try to negotiate a license agreement with Plaintiff Dell.

In June 2004, CSIRO emailed Dell a presentation on its proposed licensing scheme. (*Id.*, Ex. 7.) In that presentation, CSIRO explained that Dell's products infringed 30 claims of the '069 patent, and that "[i]f one claim is infringed, a license is required." (*Id.*, Ex. 7 at 7.) The presentation explained the alternatives available to Dell – accept the offer of a voluntary license, stop manufacturing or selling infringing products, or reject the offer (for no reason or based on invalidity or non-infringement arguments) – and described CSIRO's process for offering the voluntary licenses. (*Id.*, Ex. 7 at 11–13.) If the prospective licensee does not respond to CSIRO's initial offer, CSIRO calls the offeree's general counsel to try to get a response. If there is no response, CSIRO serves a formal offer on the same terms as other licensees. After 90 days, the royalty discount begins to decline; after 180 days, the discount is zero; after 187 days, the "offer is withdrawn" and the "voluntary license [is] no longer available." (*Id.*, Ex. 7 at 13.) The CSIRO voluntary license presentation explained that the chance of winning a lawsuit against CSIRO based on non-infringement or invalidity is "very low." (*Id.*, Ex. 7 at 14–15.) Finally, the presentation included a page entitled, "Possibility of litigation," in which CSIRO explained that once the voluntary licensing program closes, 187 days from the offer, "CSIRO may then commence litigation action against one or more firms" and that "[l]itigation can be used to block firms that do not take voluntary licenses."

1  (*Id.*, Ex. 7 at 16.)

2  On September 28, 2004, CSIRO formally offered Dell a license. (Redfern Decl, Ex. 10.) In the offer letter, CSIRO again explained that the offer was "only open for acceptance for a period of 187 days, after which time the licenses under this Voluntary Licensing Program will not be available." (*Id.*) Dell and CSIRO exchanged emails about the offer in the ensuing months and Dell asked for a one-month extension on the offer's expiration, which was granted. In February 2005, Dell again suggested that CSIRO should contact Dell's suppliers, such as Intel, about the licensing program. Dell and CSIRO did not communicate thereafter. The offer expired on May 1, 2005.

According to Defendant CSIRO, the licensing negotiations with Dell were cordial and were never terminated, and CSIRO never threatened to bring suit against Dell for patent infringement. According to Plaintiff Dell, its discussions with CSIRO, though cordial, and the litigation content of CSIRO's voluntary licensing program presentation made it reasonably apprehensive of a lawsuit by CSIRO for patent infringement. Based on the presentation, Plaintiff Dell contends that it was apprehensive that CSIRO would file suit at any time after the license offer expired on May 1, 2005. Thus, Dell tendered an indemnity claim to its supplier, Plaintiff Intel, in the event that CSIRO brought suit. Intel accepted Dell's indemnity tender and agreed to indemnify Dell. (Declaration of John R. Schiffhauer ("Schiffhauer Decl.") at ¶¶ 2–3.) CSIRO has initiated a lawsuit for patent infringement against Buffalo Technology (USA), Inc. and Buffalo, Inc. (hereinafter, "Buffalo") which Plaintiffs contend further supports their reasonable apprehension of a lawsuit.

Plaintiffs Intel and Dell filed a Complaint for Declaratory Judgment ("Complaint") against Defendant CSIRO on May 9, 2005, eight days after CSIRO's offer of a license to Dell expired. Plaintiffs seek a declaratory judgment that they have not infringed and do not infringe the '069 patent and that the '069 patent is invalid. In the Complaint, Plaintiffs contend that the Court has subject matter jurisdiction over this suit for declaratory judgment pursuant to 28 U.S.C. §§ 1331 and 1338(a). (Complaint at ¶ 4.)

## LEGAL STANDARD

**A.     Rule 12(b)(1) - Lack of Subject Matter Jurisdiction**

Pursuant to Rule 12(b)(1), "a district court must dismiss an action if it lacks jurisdiction over

3

the subject matter of the suit." *Friends of Frederick Seig Grove #94 v. Sonoma County Water Agency*, 124 F. Supp. 2d 1161, 1164 (N.D. Cal. 2000). A case must "present a case or controversy under Article III, § 2, of the Constitution" in order to be subject to federal jurisdiction. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Thus, a case is moot if there is no "present controversy as to which effective relief can be granted." *American Casualty Company of Reading, Pennsylvania v. Baker*, 22 F.3d 880, 896 (9th Cir. 1984). Accordingly, "[i]f it appears that [the court is] without power to grant the relief requested, then [the] case is moot." *Picrin-Peron v. Rison*, 930 F.2d 773, 775 (9th Cir. 1991). The plaintiff has the burden of proving jurisdiction. *Tosco Corp. v. Communities for a Better Environment*, 236 F.3d 495, 599 (9th Cir. 2001). Where a Rule 12(b)(1) motion denies or controverts jurisdictional allegations, the facts "underlying the controverted jurisdictional allegations are in dispute and are subject to fact finding by the district court." *Cedars-Sinai Medical Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993).

In the context of a patent declaratory judgment action, Federal Circuit law governs the question of whether there is an actual case or controversy. *Goodyear Tire & Rubber Co. v. Realeasomers, Inc.*, 824 F.2d 953, 955 n.3 (Fed. Cir. 1987). To make that determination, the Federal Circuit employs an objective test, which looks at the conduct of both the plaintiff and the defendant:

> First, the defendant's conduct must have created on the part of the plaintiff a reasonable apprehension that the defendant will initiate suit if the plaintiff continues the allegedly infringing activity. Second, the plaintiff must actually have either produced the device or have prepared to produce that device.

*Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988) (quoting *Goodyear*, 824 F.2d at 955) (emphasis added). In *Arrowhead*, the court distilled the test down to two "core elements:" "(1) acts of defendant indicating an intent to enforce its patent; and (2) acts of plaintiff that might subject it or its customers to suit for patent infringement." 846 F.2d at 737; *see also Teva Pharmaceuticals USA Inc. v. Pfizer Inc.*, 395 F.3d 1324, 1332 (Fed. Cir. 2005). Article III "mandate[s] that the injury in fact be 'concrete,' and 'actual or imminent, not conjectural or hypothetical.'" *Teva*, 395 F.3d at 1333 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)).

**B.     The Foreign Sovereign Immunities Act**

4

Foreign states are "presumed to be immune from the jurisdiction of the United States courts unless one of the [FSIA's] exceptions to immunity applies." *Moore v. United Kingdom*, 384 F.3d 1079, 1082 (9th Cir. 2004). The exceptions to the FSIA are commonly known as the waiver exception, § 1605(a)(1), the commercial activity exception, § 1605(a)(2), the immovable property exception, § 1605 (a)(4), and the tortious activity exception, § 1605(a)(5). The § 1605(a)(2) commercial activity exception to the FSIA "denies immunity in any case in which the action is based upon a commercial activity carried on in the United States by the foreign state." *Joseph v. Office of Consulate General of Nigeria*, 830 F.2d 1018, 1023 (9th Cir. 1987). "In determining whether the commercial activity exception applies, the courts focus only on those specific acts that form the basis of the suit." *Id*. "That is, the courts examine whether the particular conduct giving rise to the claim in question actually constitutes or is in connection with commercial activity, regardless of the defendant's generally commercial or governmental character." *Id*.

## ANALYSIS

### I.  Case or Controversy

In the patent context, the effect of the Declaratory Judgment Act, 28 U.S.C. § 2201, has been protection of competitors "victimized" by patent owners who "guerilla-like, . . . attempt extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity." *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed. Cir. 1988) (citation omitted). Before the Act was passed, competitors were often "rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue." *Id*. "After the Act, those competitors were no longer restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests." *Id*. "The sole requirement for jurisdiction under the Act is that the conflict be real and immediate, i.e., that there be a true, actual 'controversy.'" *Id*. (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–41 (1937)).

Here, Defendant CSIRO contends that there is no case or controversy as between CSIRO and Plaintiff Dell or as between CSIRO and Plaintiff Intel and that therefore, the Court lacks subject

5

matter jurisdiction. The Court examines whether the jurisdictional case or controversy requirement is met with respect to each Plaintiff separately.

**A.  With Respect to Plaintiff Dell, An Actual Case or Controversy Exists.**

With respect to whether Dell's action presents an actual case or controversy, the parties only disagree about whether the first prong of the Federal Circuit's two-part test is met. Plaintiffs contend that Defendant CSIRO's conduct created an objectively reasonable apprehension of a lawsuit on the part of Plaintiff Dell. Defendant disagrees and argues that because CSIRO never threatened to sue Dell and because Dell never broke-off the entirely cordial negotiations or affirmatively rejected CSIRO's offer, Plaintiff Dell's apprehension of a lawsuit on the basis of those discussions was not objectively reasonable and no case or controversy has yet arisen.[2] The Court agrees with Plaintiffs.

At the outset, the Court rejects Defendant's argument that there is no reasonable apprehension of suit because CSIRO never expressly threatened to sue Dell. The Federal Circuit has held that "[t]o put a putative infringer in reasonable apprehension of suit does not require an express charge of infringement and threat of suit; rather, such apprehension may be induced by subtler conduct if that conduct rises 'to a level sufficient to indicate an intent [on the part of the patentee] to enforce its patent,' i.e., to initiate an infringement action." *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed. Cir. 1996). That Defendant CSIRO did not expressly threaten to sue Dell if it rejected the license offer is not dispositive on the question of whether CSIRO's conduct created a reasonable apprehension of suit. The Court now turns to the license negotiations and whether CSIRO's conduct in that context would objectively create a reasonable apprehension of suit.

CSIRO and Dell were engaged in licensing negotiations throughout 2004. CSIRO tendered a formal offer in September 2004. It is not disputed that the license negotiations were always cordial and were never expressly broken off by either party. Accordingly, Defendant argues, the "safe harbor rule" for license negotiations applies. "When there are proposed or ongoing license negotiations, a litigation controversy normally does not arise until the negotiations have broken

---

[2] CSIRO does not dispute that Plaintiff Dell satisfies the second prong of the Federal Circuit's two-part test by manufacturing and selling products that incorporate technology allegedly covered by the '069 patent.

6

down." *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053 (Fed. Cir. 1995); *see also EMC*, 89 F.3d at 811.  Here, however, license negotiations were *not* ongoing when the instant declaratory judgment action was filed.  Although the negotiations were not rancorous and although Dell did not affirmatively terminate the negotiations by expressly rejecting CSIRO's offer, the license offer expired on May 1, 2005, eight days before Plaintiffs filed the instant action.  CSIRO had made it clear, in its June 2004 presentation to Dell on the license program, that should Dell decline to enter into a license agreement with CSIRO, litigation would be the next step.  (*See* Redfern Decl., Ex. 7 at 13–16.)  Once CSIRO's offer had expired, it was objectively reasonable, based on prior communications from CSIRO, for Dell to be apprehensive that CSIRO would bring a patent infringement lawsuit.

In *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (9th Cir. 2005), the Ninth Circuit held that EFI, who manufactured and sold products that allegedly infringed Coyle's patent, was reasonably apprehensive that Coyle, the patentee, would bring suit *even where the deadline for negotiations to be concluded between the parties had not yet passed*.  In the instant case, negotiations *had* terminated, an even stronger case for finding that the plaintiff was reasonably apprehensive of a lawsuit.  Although it is true that Coyle's threats to litigate were more explicit, and more impassioned in *Electronics for Imaging* than CSIRO's were here, what is clear from that case is that ongoing license negotiations, depending on the facts of the case, does not necessarily "deprive [the declaratory plaintiff] of the right to sue." *Electronics for Imaging*, 394 F.3d at 1347.

Defendant CSIRO argues that there is no indication that the termination of the license offer that was tendered to Dell in September 2004 meant the end of all license negotiations between the parties.  Defendant suggests that this was only one of many possible licensing schemes Dell could have agreed to and that just because *that* offer terminated did not mean it was reasonable to anticipate that CSIRO would soon bring suit.  The Court disagrees.  Through its June 2004 presentation on the licensing program, the September offer letter, and the ensuing email exchanges with Dell, CSIRO indicated an intent to try to get Dell to buy a license by May 1, 2005, and if Dell rejected the offer, to initiate litigation against Dell.  It was objectively reasonable for Dell to be apprehensive, once the license offer had expired on May 1, that CSIRO would soon bring suit.

7

   This case is distinguishable from the *Phillips Plastics* case on which Defendant relies. In *Phillips Plastics*, the Federal Circuit agreed with the district court that there was no case or controversy (and thus, no subject matter jurisdiction) where license negotiations between the parties were at such an early stage that licensing terms had not been discussed, and where the declaratory plaintiff filed suit before even responding to the patentee's request for sales and pricing information (to "put together a reasonable offer of a licensing proposal"). 57 F.3d 1052. Here, the license negotiations were much further along than in *Phillips Plastics*. CSIRO had extended a formal offer with clear terms and had clearly indicated that litigation would be the next step if Dell rejected the license offer. Indeed, CSIRO's offer had already expired. Even though it might have been (and might still be) possible to revive negotiations, negotiations were not ongoing at the time this action was filed. The expiration of CSIRO's offer, along with CSIRO's none-too-subtle suggestion, in its June 2004 presentation, that it would initiate litigation if Dell rejected its offer, support a finding that Dell's apprehension of suit was objectively reasonable. The *Phillips Plastics* holding, that a case or controversy does not arise where license negotiations are ongoing, does not apply here.

   Additionally, the Court agrees that CSIRO's lawsuit against Buffalo for infringement of the '069 patent contributed to Plaintiff Dell's apprehension of a lawsuit. Defendant contends that the Buffalo situation is distinguishable from the instant factual backdrop such that that wholly separate lawsuit would not reasonably lead Dell (or Intel) to anticipate a similar lawsuit. In the Buffalo case, CSIRO had initiated license negotiations with Buffalo which were not warmly received. Buffalo, like Dell, referred CSIRO to its supplier, and then eventually refused to meet with CSIRO and terminated the negotiations. (Redfern Decl., Exs. 24, 25.) CSIRO then brought suit against Buffalo. Here, Dell did not cut short the license negotiations with CSIRO, but instead, never responded to the offer and let it expire. While the manner in which license negotiations ceased differs in the two cases, the Court finds that the Buffalo suit supports Plaintiffs' apprehension that CSIRO would bring a patent infringement suit against Dell if Dell declined the license offer. That Dell did not decline before the offer expired is a distinction without a difference. By bringing suit against Buffalo, CSIRO indicated a willingness to bring suit against license offerees who declined to enter into a license agreement. The Buffalo suit would certainly intensify Plaintiffs' concerns that they would

1  be sued once they had declined, either affirmatively or passively, CSIRO's offer of a license.

2       For these reasons, the Court finds that Plaintiff Dell was reasonably apprehensive that
3  CSIRO would file a lawsuit against Dell for patent infringement. Thus, a case or controversy exists
4  as between Dell and CSIRO for purposes of establishing subject matter jurisdiction.

5      **B.**    **An Actual Case or Controversy Exists As Between Intel and CSIRO.**

6       With respect to Plaintiff Intel, the parties dispute both prongs of the Federal Circuit's two-
7  part test for discerning whether the jurisdictional case or controversy requirement is satisfied. That
8  is, the parties disagree about whether CSIRO's conduct created a reasonable apprehension of suit on
9  the part of Plaintiff Intel and they also disagree as to whether Plaintiff Intel is engaging in acts that
10  might subject it to suit for patent infringement. The Court addresses the two prongs separately.

11      **1.**    **Intel Was Reasonably Apprehensive That CSIRO Would Bring Suit.**

12       CSIRO never threatened suit against Intel for patent infringement. Indeed, CSIRO and Intel
13  never communicated at all regarding the '069 patent. According to Defendant, this means that Intel
14  could not have objectively developed a reasonable apprehension of suit from CSIRO. Plaintiffs
15  disagree and contend that despite their lack of direct communication with one another, CSIRO's
16  conduct created a reasonable apprehension on the part of Intel that CSIRO would bring suit. More
17  specifically, Plaintiffs argue that CSIRO's communication to Dell, an Intel customer whom Intel had
18  indemnified, that Dell products implemented Intel technology that infringed the '069 patent and that
19  CSIRO would bring suit against Dell if Dell rejected its license offer created a reasonable
20  apprehension on the part of Intel that it would be subject to a lawsuit for patent infringement,
21  particularly since CSIRO recently brought suit against Buffalo, an entity that, like Dell,
22  manufactures and sells products that incorporate the technology allegedly covered by the '069
23  patent. The Court agrees with Plaintiffs here.

24       At the outset, the Court notes that the Federal Circuit has held that "[i]f the circumstances
25  warrant, a reasonable apprehension may be found in the absence of *any* communication from
26  defendant to plaintiff." *Arrowhead*, 846 F.2d at 736 (citation omitted). Thus, the fact that Intel and
27  CSIRO never directly communicated with one another is not dispositive on the question of whether
28  CSIRO's conduct created, on the part of Plaintiff Intel, a reasonable apprehension of suit. The

9

remaining question, then, is whether CSIRO's licensing communications with Dell, Intel's customer, along with CSIRO's patent infringement lawsuit against Buffalo, were sufficient to create Intel's apprehension. The Court finds that they were.

Second, the Court quickly disposes of Defendant's argument that Intel could not have been reasonably apprehensive of suit based on CSIRO's license negotiations with Dell because CSIRO never threatened to sue Dell. As discussed above, CSIRO's conduct in the midst of license negotiations with Dell evinced a clear intention on the part of CSIRO to initiate litigation in the event that Dell opted not to accept a license from CSIRO. Thus, as long as threats to Dell are sufficient to create a reasonable apprehension of suit on the part of Intel, there exists a case or controversy between Intel and CSIRO. The Court now turns to whether Intel's position as supplier and indemnifier of Dell is sufficient.

In *Arrowhead*, the Federal Circuit endorsed an earlier Seventh Circuit decision which "employed a test requiring an apprehension that plaintiff *or its customers* face an infringement suit or threat of one." 846 F.2d at 736 (quoting *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979)) (emphasis added). Defendant contends that the Federal Circuit's holding in the *TCI* case, that "[a] suit filed against a [one] party, even if [the declaratory judgment plaintiff] could potentially be required to indemnify that party, is not a suit that [the declaratory judgment plaintiff] itself faces," abrogated the holding in *Arrowhead*. 248 F.3d at 1341–42. But the Court disagrees. The *TCI* case is distinguishable factually and procedurally from the case at bar. There, the plaintiff patent holder brought suit for infringement and the defendant, in turn, brought a counter-claim for non-infringement. At some point during the litigation, the plaintiff dropped its claim for infringement and covenanted not to sue defendant based on the allegedly infringing products. The question there was whether there existed a case or controversy that provided a basis for defendant's declaratory judgment action against plaintiff for non-infringement. First of all, that case did not involve customer suits as did *Arrowhead*; second, at the time subject matter jurisdiction was raised as a potential problem, the patent holder had covenanted not to sue the declaratory plaintiff, thereby removing any apprehension of a lawsuit. It is true that *Arrowhead*'s facts differ slightly from the case at bar in that in *Arrowhead*, the patent holder warned Virginia Power, one of Arrowhead's

10

1  customers, about possible infringement and expressly mentioned potential Arrowhead liability.
2  Here, CSIRO never expressly suggested to Dell that Intel might be liable for patent infringement.
3  But the Court finds that distinction irrelevant. The point is that in both cases, the patent holder was
4  threatening litigation against the supplier's (declaratory plaintiff) customers. Intel's status as the
5  supplier to Dell of technology that CSIRO was claiming infringed its patent is sufficient, just as
6  Arrowhead's was, to warrant a reasonable apprehension of suit on the part of Intel.[3]

   As discussed above, the Court agrees with Plaintiffs that the Buffalo suit intensified their
apprehension that CSIRO would bring suit against them for infringement. By bringing suit against
Buffalo, CSIRO indicated a willingness to bring suit against license offerees who declined to enter
into a license agreement. Dell had rejected CSIRO's license offer by not responding to the offer
before its expiration. Thus, that CSIRO filed suit against Buffalo in similar (albeit not identical)
circumstances would certainly intensify Plaintiffs' concerns that they would be sued once they had
declined, either affirmatively or passively, CSIRO's offer of a license.

   For the foregoing reasons, the Court finds that the first prong of the Federal Circuit's two-part test for assessing the jurisdictional case or controversy requirement is met as to Plaintiff Intel.

### 2. Because Intel's Customers (e.g. Dell) Engage in Acts That Give Rise to a Patent Infringement Lawsuit, the Second Prong is Satisfied.

Defendant contends that Intel has offered no evidence to demonstrate that it satisfies the second prong of the Federal Circuit's jurisdictional case or controversy test. The Court disagrees. To satisfy the second prong, Plaintiff Intel must show that it "engage[s] in an actual making, selling, or using activity subject to an infringement charge or must have made meaningful preparation for such activity." *Arrowhead*, 846 F.2d at 736. Because Plaintiff Intel alleges in the Complaint that its

---

[3] The Court also notes that several courts have found that a duty to indemnify is sufficient to create a justiciable controversy. *See, e.g.*, *Mineaba Co., Ltd. v. Pabst*, 13 F. Supp. 2d 35, 39 (D.D.C. 1998). Defendant contends that the *TCI* case stands for the contrary proposition – that the possibility that a patent holder might sue a party whom a second party may be required to indemnify is *insufficient* to create a reasonable apprehension of suit on the part of the second party. The Court finds, however, that the *TCI* case does not stand for quite as broad a proposition as Defendant suggests. In *TCI*, where the declaratory plaintiff argued, rather abstractly, that it might be required to indemnify an unnamed entity (that was not involved in that case) who might be sued by the patent holder for infringement. The facts of the case at bar are quite different. Here, Intel, the indemnifying party, is the actual manufacturer of the components, supplied to and used by Dell, that CSIRO has claimed are infringing. The threat of suit here is far more real than the speculative threat at issue in *TCI*.

products implement the technology that CSIRO claims infringes the '069 patent and because Intel's technology is incorporated into Dell's products which CSIRO claims infringe the patent, Intel's ongoing business of manufacturing those products and supplying those products to Dell constitutes acts that give rise to a patent infringement suit by CSIRO, whether or not CSIRO has expressly threatened it. The Court finds that the second prong is met.

---

In sum, Plaintiffs have met both prongs of the Federal Circuit's two-part jurisdictional case or controversy test. Each Plaintiff has sufficiently demonstrated that it was reasonably apprehensive that CSIRO would bring a lawsuit against them for patent infringement, and each Plaintiff engages in acts that give rise to a patent infringement suit by CSIRO. Accordingly, the Court finds that Plaintiffs have satisfied the case or controversy requirement for subject matter jurisdiction.

## II. Foreign Sovereign Immunity

Defendant CSIRO contends that even if the Court finds that Plaintiff Intel has demonstrated that there is a case or controversy, subject matter jurisdiction does not lie here because CSIRO is immune from suit by Intel pursuant to the Foreign Sovereign Immunities Act. Defendant argues that because CSIRO is an agency of the Australian government, the exclusive basis for jurisdiction over CSIRO is under the FSIA. According to Defendant, Plaintiff Intel did not plead, nor could it have pled, jurisdiction over CSIRO under that statute nor did it plead any of the exceptions to the jurisdictional immunity of a foreign state under 28 U.S.C. § 1605.[4] Plaintiff Intel contends, to the contrary, that Defendant's licensing negotiations with Dell, one of Intel's customers and whom Intel has indemnified, amount to relevant commercial activity such that the commercial activity exception, codified as 28 U.S.C. § 1605(a)(2), would apply even as to Intel, with whom Defendant has had no direct commercial (or other) contact. The Court agrees with Plaintiffs.

Defendant is right that "[t]he FSIA is the exclusive source of subject matter jurisdiction over suits involving foreign state or their instrumentalities." *Joseph*, 830 F.2d at 1021. The question here is whether the § 1605(a)(2) commercial activity exception to the FSIA applies as to Plaintiff Intel.

---

[4] Defendant concedes that because CSIRO and Dell have engaged in licensing negotiations, the commercial activity exception to immunity over a foreign state, codified as 28 U.S.C. § 1605(a)(2), would appear to apply with respect to Plaintiff Dell. (*See* Motion at 14, n.4.)

12

The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act." *Id*. at 1023 (citing 28 U.S.C. § 1603(d)). Court are to evaluate the nature rather than the purpose of the activity in question. *Id*. The parties appear to agree that CSIRO's interaction with Dell constituted commercial activity under the FSIA. At issue, however, is whether CSIRO's license negotiations with Dell constitute commercial activity with respect to Intel, Dell's supplier. The Court finds that they do.

The parties have not cited, and the Court has not found, a case directly on point. However, the Court finds that CSIRO's negotiations with Dell, which CSIRO initiated, over allegedly infringing products that incorporate component parts using technology covered by the U.S.-issued '069 patent, necessarily implicated Intel, the manufacturer of those component parts. By engaging in licensing negotiations with Dell, Intel's customer, CSIRO indirectly engaged in commercial activity with Intel. Thus, the Court finds that the commercial activity exception to foreign sovereign immunity applies here.

### III.     Improper Purpose

Defendant contends that the Court should decline discretionary jurisdiction over Plaintiffs' declaratory judgment action because the action was brought for the improper and collusive purpose of manipulating the judicial system and forum shopping. As described more fully above, Plaintiffs have demonstrated that they have a legitimate interest in resolving the conflict with CSIRO over whether Dell's products (and their Intel components) infringe the '069 patent. If they were to continue to manufacture and sell their allegedly infringing products, waiting for CSIRO to "grasp the nettle and sue," they would open themselves up to increasing their potential liability for that alleged infringement. This is the very risk that the Declaratory Judgment Act was enacted to alleviate. The Court does not find, on this record, that Plaintiffs brought this action for an improper purpose.

///

///

///

### CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is hereby **DENIED**.

This Order terminates docket entry no. 34.

**IT IS SO ORDERED.**

Dated: September_13__, 2005

_____
MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE